**In-Cho CHUNG, Appellant in No. 74–1875,**

**v.**

**Lawrence PARK, Individually and as President of Mansfield State College, et al., Appellants in No. 74–1876.**

**Nos. 74–1875, 74–1876.**

United States Court of Appeals, Third Circuit.

Argued March 3, 1975.

Decided April 11, 1975.

Martin M. Fine, Fine, Eisenbeis & Felix, Williamsport, Pa., for appellant in No. 74–1875 and cross-appellee in No. 74–1876.

Robert F. Nagel, Deputy Atty. Gen., Commonwealth of Pennsylvania, Harris-

burg, Pa., for appellees in No. 74–1875 and cross-appellants in No. 74–1876.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The principal issue on this appeal is whether Dr. In-Cho Chung, a professor at Mansfield State College, was denied procedural due process when his employment was terminated (1) without his being afforded a hearing prior to the decision by the administration that termination was warranted, and (2) by imposing the burden of proof on Dr. Chung, in the hearing that was afforded, to show that the decision to terminate was unreasonable, arbitrary or capricious.

Dr. Chung was employed as a biology professor at Mansfield State College for five academic years, between September 1967 and June 1972. Before the end of each year he was offered and accepted a position for the following year.[1] On December 6, 1971, Dr. Park, the president of the college, recommended to the board of trustees that Dr. Chung's contract not be renewed for the 1972 school year, and notified Dr. Chung of the following reasons for the decision:

1. Those most knowledgeable about Dr. Chung's teaching record and his contributions to the biology department had not given him favorable recommendations;

2. There was significant concern among the students about the quality of Dr. Chung's teaching;

3. The department could not assign him his full share of teaching responsibilities; and

4. Dr. Chung had refused to cooperate with the department and his colleagues in efforts to identify and resolve the above problems.

After receiving notification of termination, Dr. Chung, through counsel, negotiated with the State Attorney General's Office and eventually agreed to submit the issue of the validity of his termination to a neutral arbitration panel. Detailed specifications for the hearing were agreed upon by counsel for Dr. Chung and the Attorney General's Office.[2]

Prior to the hearing Dr. Chung was more fully notified of the reasons for his termination when he was provided with copies of all documents relied on by the college in reaching its decision to terminate.

It was explicitly agreed by Chung's attorney and the Attorney General that the issue before the arbitration panel would be: "Was the action taken by the administration at Mansfield State College on December 6, 1971 not to grant continuing employment status to the complainant, arbitrary, capricious, or discriminatory?"

1. On January 12, 1970, the president of the college offered a fourth probationary year to Dr. Chung, but notified him that some students had complained they had difficulty understanding him; that there were disappointingly small enrollments in his classes; and that a tenure decision was being delayed because a new chairman was being appointed for the biology department.

2. The agreed specifications provided that:
 (a) The hearing would be public.
 (b) Admissibility of evidence would be within the discretion of the panel chairman subject to general considerations of relevancy and materiality.
 (c) A written transcript would be kept.
 (d) Both parties would present written evidence or oral testimony and would have the right to cross-examine.

(e) Both parties would be represented by counsel.
 (f) The panel would submit a written statement of its findings of fact and conclusions.
 (g) The complainant would have the right to appeal the decision of the hearing panel pursuant to the Pennsylvania Administrative Agency Law, 71 P.S. § 1710.1 et seq.
 (h) The initial burden would rest on the complainant to establish a prima facie case of arbitrariness, caprice, or discrimination.
 (i) The college would be required to present written evidence to support its decision after the complainant established his prima facie case.
 (j) The burden of persuasion would rest on the complainant to establish his case by a preponderance of the evidence.

The hearing panel was composed of three individuals whose impartiality has not been questioned, including two professors teaching at colleges other than Mansfield and a local attorney who served as chairman. Dr. Chung was vigorously represented at the hearing by counsel, who was permitted to cross-examine the adverse witnesses, to challenge evidence presented by the college, and to present any written evidence or oral testimony he wished. A transcript of the eight-day hearing was prepared and provided to Dr. Chung. After presentation of the evidence the panel received briefs and proposed findings of fact, and then wrote an opinion.

The panel found, in substance, that: (1) the evidence clearly supported the conclusion that the reasons stated in the President's letter had factual bases; (2) Dr. Chung had failed to produce evidence indicating any bias, prejudice, or discrimination against him; and (3) the record clearly indicated that many persons associated with the college went to extreme lengths to identify and seek solutions for Dr. Chung's teaching problems, but that Dr. Chung's lack of cooperation intensified as time went on so that Dr. Park had only one choice—to discharge the plaintiff.

Dr. Chung sought review of the panel's decision in the District Court for the Middle District of Pennsylvania.[3] The district court held that Dr. Chung had gained tenure after his third year of employment, but that the hearing provided to Dr. Chung fully satisfied the college's tenure regulations and the requirements of due process.[4] Accordingly, the district court entered judgment for defendants.

On appeal Dr. Chung contends (1) that the procedures followed by the college in terminating his employment did not accord with those outlined in the college tenure regulations, and that such irregularity constituted a breach of his contract; and (2) that he was denied due process by the procedure followed by the college.

The Commonwealth filed a cross-appeal, contending that the district court erred in holding that Dr. Chung had tenure and in failing to hold that the defendant had a valid defense of sovereign immunity.

## A. DR. CHUNG'S CONTRACTUAL RIGHTS

Even assuming, arguendo, that Dr. Chung did have tenure and was contractually entitled to a hearing which scrupulously complied with the procedures outlined in the college tenure regulations, we cannot say that the district court erred in finding that Dr. Chung waived any contractual rights to which he was entitled. Under Pennsylvania law, contractual rights may be waived by a subsequent agreement between the parties. Betterman v. American Stores Co., 367 Pa. 193, 80 A.2d 66, cert. denied 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951). The district court's finding that the parties had reached such a subsequent agreement when, after extensive negotiations, they specifically stipulated to the hearing procedures actually employed, is not clearly erroneous.[5] In any event, the district court found, as a fact, that the hearing satisfied the college's tenure regulations.

## B. DR. CHUNG'S DUE PROCESS RIGHTS

Dr. Chung's principal contention on appeal is that the hearing before the arbitration panel failed to satisfy the requirements of due process.[6] The Su-

---

3. Although Dr. Chung did not seek review in the Pennsylvania Court of Common Pleas, he could have done so pursuant to the Pennsylvania Administrative Agency Law, Pa.Stat.Ann., tit. 71, § 1710.1 et seq. Indeed, his agreement with the Attorney General specifically so provided.

4. Pennsylvania law is controlling on the contract issue, which was within the pendent jurisdiction of the district court. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

5. *See* Fed.R.Civ.P. 52(a).

6. In deciding the due process claim, we assume, without deciding, that Dr. Chung had tenure. Although courts traditionally avoid constitutional questions whenever possible,

preme Court has indicated that in pre-termination hearings,[7] such as the one provided in this case, the person being deprived of his "property interest" is entitled to minimum procedural safeguards which are adapted to the particular characteristics of the interests involved and the limited nature of the controversy. These safeguards may include: (1) written notice of the grounds for termination; (2) disclosure of the evidence supporting termination; (3) the right to confront and cross-examine adverse witnesses; (4) an opportunity to be heard in person and to present witnesses and documentary evidence; (5) a neutral and detached hearing body; and (6) a written statement by the fact finders as to the evidence relied upon. *See* Morrisey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Whether or not Dr. Chung was entitled, under the circumstances here, to this panoply of protective devices, he was, in fact, afforded all of these safeguards in his termination hearing. He argues, however, that he is entititled to more protection than these procedures provided him, under the concept that a hearing must be held at a meaningful time and in a meaningful manner in order to satisfy due process. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

More particularly, Dr. Chung asserts that the college made the decision to terminate before giving him a hearing and then placed the burden of proof on him to show that the decision of the administration to terminate was arbitrary, capricious or discriminatory. This procedure, Dr. Chung contends, does not comport with due process according to the rule of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). He would have us hold that due process in the present case required that a hearing be held before any decision to terminate was reached by the administration, and that the burden of proof at such a hearing should have been on the administration to show that the decision to terminate was justified.

 Due process does not impose such strictures on professorial pre-termination proceedings. Unlike some legal rules, due process is protean in nature. The determination of what process is due depends on appropriate accommodation of the competing interests involved. Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

 Thus, we must here weigh the professor's interest in avoiding an unreasonable termination against the college's interest in having an efficient process for identifying and ridding itself of incompetent faculty members. In accommodating these interests we are cognizant of the Supreme Court's admonition that:

> Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities.

Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

To determine what process is due we have reviewed the guidelines enunciated in Morrisey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and

---

resolution of the state contract law question here would not enable us to avoid deciding a constitutional question, for even were we to determine that Dr. Chung did not have tenure, we would nevertheless still have to address the difficult constitutional question—not briefed by the parties—whether Dr. Chung had an expectancy of continued employment which amounted to a sufficient property interest to entitle him to procedural due process protection. *See* Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

7. A pre-termination hearing is not a hearing held prior to any decision to terminate, as Dr. Chung suggests, but rather a hearing held prior to a termination of benefits. *See* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In the present case, any hearing held prior to the end of the academic year would be a pre-termination hearing.

Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), but have found nothing in these cases which suggests that Dr. Chung was entitled to have a hearing prior to a decision by the college to terminate, or to have the college bear the burden of proof at the hearing that was actually held after the decision to terminate.

 Indeed, Perry v. Sindermann, 408 U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), states that the function of the hearing procedure is to inform the professor of the grounds for his non-retention and to allow him to challenge their sufficiency. Thus *Sindermann* suggests that a *post-decision* hearing in which a professor has the burden of proof is adequate to satisfy due process. Moreover, the administration of the internal affairs of a college and especially the determination of professional competency is a matter peculiarly within the discretion of a college administration.

Due process should not be employed to insure that this exercise of discretion is "wise" but only that it is not unreasonable, arbitrary or capricious.[8] If the procedure used by the college is adequate to prevent unreasonable, arbitrary or capricious termination decisions, it satisfies due process.[9] The procedure used in this case was sufficient for these purposes.[10] Dr. Chung was fully informed of the grounds for his termination prior to the hearing, and had a full opportunity to prove to a neutral arbitration panel that the termination was unreasonable, arbitrary or capricious, but failed to do so.

Accordingly, the judgment of the district court will be affirmed.[11]

---

**8.** We recognize that in some situations the standard of review employed here might be inadequate. *See, e. g.*, Morrisey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 297 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Those situations, however, are distinguishable from the present case, because they involved a different type of interest and a different type of decision making. Here we are not dealing with a decision whether Dr. Chung satisfied a specific set of statutory or administrative conditions which would have entitled him to continuing employment. Rather, we are concerned with an exercise of discretion by the college administration as to whether Dr. Chung was competent to perform the duties of a professor. By its nature this type of decision cannot be adjudged as correct or erroneous, but only as reasonable or unreasonable. Moreover, Dr. Chung's property interest here would not seem to be of the same critical magnitude as the liberty involved in *Morrisey* or the sole available means of subsistence involved in *Goldberg*. The difference in the nature of the interests implicated affects the procedural requisites for the hearing. Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

**9.** Johnson v. Board of Regents, 377 F.Supp. 227, 239 (W.D.Wis.1974); *see* Moynahan Properties, Inc. v. Lancaster Village Cooperative, Inc., 496 F.2d 1114, 1118 (7th Cir. 1974).

**10.** The district court also determined that "the conclusion of the hearing panel would have supported the termination of a tenured-professor at Mansfield State College."

**11.** The district court held that the appellees, by their general appearance, waived the defense of sovereign immunity. In light of our decision we do not reach the waiver issue.