**Pasquale DiLUIGI, Plaintiff,**

v.

**Harry J. MIER, Jr., Individually and in his capacity as Adjutant General of Pennsylvania, Defendant.**

**Civ. No. 76–1332.**

United States District Court, M. D. Pennsylvania.

April 18, 1977.

As Amended June 15, 1977.

Bruce E. Endy, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for plaintiff.

David Dart Queen, Harrisburg, Pa., Joseph R. Reeder, Office of the Judge Adjutant Gen., Washington, D. C., for defendant.

## OPINION

MUIR, District Judge.

Currently pending is Defendant Mier's motion to dismiss or, in the alternative, for summary judgment. For purposes of the motion the Court will accept as true all well-pleaded allegations contained in the Complaint and will construe it in the light most favorable to Plaintiff DiLuigi in order to determine whether, under any circumstances, he might be entitled to relief. See *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir. 1977).

On June 16, 1975, Defendant Mier, the Adjutant General of the Pennsylvania National Guard, hired DiLuigi as an electronics mechanic under the authorization for civil technicians in 32 U.S.C. § 709. The terms of his employment required DiLuigi to serve a one-year probationary period. See regulations issued by the Secretaries of the Army and the Air Force and approved by the Secretary of Defense contained in the Technicians Personnel Manual, Chapter 300, sub-chapter 4, ¶ 4–3(a). On January 30, 1976, DiLuigi received the second of two "within grade" increases in salary during his first year of work. His performance at all times was deemed acceptable by his immediate superior and he had no conflicts with his co-workers.

Sub-chapter 8 of Chapter 315 of the Federal Personnel Manual issued by the Civil Service Commission provides for the separation of probationary employees. Paragraph 8–4(4) requires that the employee be notified of his or her non-retention. Additionally, 32 U.S.C. § 709(e)(6) entitles a civilian technician employed by the National Guard to 30-days notice of an unfavorable decision on his continued employment.

On March 23, 1976, DiLuigi's superiors decided to terminate his employment with

the Pennsylvania National Guard effective April 30, 1976 because his "conduct and character traits are such that retention in federal service is not recommended." Notice of this decision was conveyed to DiLuigi in a letter dated March 26, 1976, which cited his ". . . [in]ability to cope with certain responsibilities inherent with [sic] your position . . ." and his ". . . [in]ability to grasp and maintain basic fundamentals required of your position." The letter closed with an invitation to direct "questions relative to above termination" to the office of the Adjutant General. DiLuigi alleges that the reasons advanced for his non-retention mask a malicious, arbitrary, and capricious action on the part of his employers which deprived him of rights secured by the United States Constitution.

DiLuigi does not contend that the Defendant violated applicable National Guard regulations in effecting his dismissal. Rather, he argues that the minimal steps taken to notify him of and carry out his separation fall short of the due process guaranteed by the Fifth Amendment.

To determine whether DiLuigi was "deprived of . . . property, without due process of law" requires a two-step inquiry. First, the Court must determine the extent of DiLuigi's "property rights," if any, in this context. Then, only if he has some "property interest" which has been impaired by the action of the Defendant and his agents does it become necessary to analyze whether the "taking" was effectuated in violation of the "due process" requirements of the Fifth Amendment. Cf. *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31, 38 (3d Cir. 1974), vacated and remanded on other grounds, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); see, also, *Chung v. Park*, 377 F.Supp. 524 (M.D.Pa.1974), aff'd 514 F.2d 382 (3d Cir. 1975), cert. den., 423 U.S. 948, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975).

Existing rules that stem from federal statutes and regulations define DiLuigi's "property interest" in employment with the National Guard beyond his one-year probationary period. Cf. *Board of Regents*

*v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). DiLuigi's "property" must be more than a "unilateral expectation" on his part. He must, instead, have a legitimate claim of entitlement to continued employment. *Ibid.* Thus, for example, DiLuigi's personal assessment of his two within-in-grade increases and his immediate superior's evaluation of his work as indications that his performance was satisfactory and that he would be retained does not, standing alone, suffice to create the requisite property interest. However, he does not rest his claim to a constitutionally-protected interest solely on those factors.

32 U.S.C. § 709(e)(3) provides:

"(e) Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—

\*　　\*　　\*　　\*　　\*　　\*

(3) a technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned;"

DiLuigi contends that this "for cause" provision creates a legitimate expectation of continued employment for *all* technicians, whether probationary or tenured. Defendant Mier argues that regulations legitimately promulgated by the Secretaries of the Army and Air Force which create two classes of civilian technicians and minimize the procedures necessary to terminate a probationary employee, revoke any property interest originally vested in "conditional" employees such as DiLuigi by the enactment of § 709(e)(3). This contention fails for two reasons. First, Mier cites no regulation which explicitly negates a probationary technician's entitlement to a "for cause" termination. The only regulations to which he points are ones which set out the process which is due such an employee when he is discharged. Second, even if a regulation countermanding subsection (3) could be found, it would be invalid. § 709(e)(3) creates an expectation in all civilian technicians that they will have future employment unless "cause" can be shown for their dismissal: "Nor can § 709(e)(3) provide the foundation for any

due process claim in this case, [involving a technician's termination by reason of his inability to reenlist in the National Guard] since *the property interest it creates in continued employment* is confined, in all events to the guardsman's term of enlistment." (Emphasis added.) *Tennessee v. Dunlap*, 426 U.S. 312, 316, 96 S.Ct. 2099, 2101, 48 L.Ed.2d 660 (1976). Although the "Secretary concerned" has the power to issue regulations to flesh out the mandate of Congress, such authority does not permit him to alter the fundamental structure of the legislatively-created property interest recognized by *Dunlap*. Rather than being "subject to" regulations prescribed by the "Secretary concerned," § 709(e)(3) is "under" such regulations. If the "subject to" language had been employed by the draftsman of § 709, the Court could perhaps be persuaded that the Secretary has the power to alter the plain meaning of subsection (3) and redefine the property interest created therein. However, even if one can accept such a semantic distinction, use of the word "under" imparts to the Secretary only the power to regulate the standards on which "for cause" terminations are based and the procedures by which such dismissals are effectuated, but would not allow him to vitiate the "for cause" property interest. It is irrelevant that Congress, in enacting a statute which makes no distinction between probationary and tenured technicians, has ignored a long-standing governmental employment *modus operandi* which treats new workers as at-will employees. If first-year National Guard technicians are to have no legitimate expectation of continued employment, even though their performance is satisfactory, then an appropriate amendment to § 709(e)(3) must be passed.

Having determined that DiLuigi has an interest which is entitled to some constitutional protection, the Court must next determine what process is "due" to a probationary National Guard technician before he may be terminated. Although the Court is of the view that the letter which informed DiLuigi of his non-retention stated certain conclusory reasons therefor, and invited him to make inquiry does not suffice,

it does not decide, at this time, the precise panoply of procedural steps to which DiLuigi was entitled. Defendant Mier's motion will be denied.

An appropriate order will be entered.