**Thomas J. ROSS, Plaintiff,**

v.

**PENNSYLVANIA STATE UNIVERSITY et al., Defendants.**

Civ. No. 77–257.

United States District Court,
M. D. Pennsylvania.

Jan. 6, 1978.
As Corrected April 7, 1978.

148

Clifford A. Rieders, Stuart, Murphy, Smith, Mussina, Harris & Rieders, Williamsport, Pa., for plaintiff.

Delbert J. McQuaide, R. Mark Faulkner, McQuaide, Blasko & Brown, State College, Pa., for defendants.

## OPINION

MUIR, District Judge.

Ross has filed this complaint pursuant to 42 U.S.C. § 1983 alleging that the Defendants have violated his due process rights pursuant to the Fourteenth Amendment of the United States Constitution because they dismissed him as a graduate student in the field of ceramic science at the Pennsylvania State University without a hearing and deprived him of a position as a graduate assistant at Pennsylvania State University without a prior hearing. The parties at a pre-trial conference held November 1, 1977 informed the Court that they would submit this case to it on the basis of stipulated facts concerning the question of liability. If liability is found, the parties agreed that the question of damages and equitable remedies would be presented at a subsequent session of Court. The Court on November 1, 1977 indicated that it would accept pendent jurisdiction as to Ross' contention that the actions of the Defendants violated his state law contract rights but that it would dismiss the defamation claim. The following are the Court's findings of fact, discussion and conclusions of law.

### I. Findings of Fact.

1. Defendant, The Pennsylvania State University, is an educational corporation

chartered by the legislature of the Commonwealth of Pennsylvania in 1855.

2. There is no issue in this case with respect to the existence of state action. For the purpose of this lawsuit and this lawsuit only state action is not contested.

3. Defendant, John W. Oswald is President of the University and in that capacity is charged with the overall management and governance of the Pennsylvania State University.

4. Defendant, Guy E. Rindone, is employed by the University as a Professor of Ceramic Science and is Chairman of the Ceramic Science Section of the Department of Material Sciences, College of Earth and Mineral Sciences, of the Pennsylvania State University, and resides in Centre County, Pennsylvania.

5. Defendant, Richard C. Bradt, is employed by the University as a Professor of Ceramic Science, in the Ceramic Sciences Section of the Department of Material Sciences, within the College of Earth and Mineral Sciences of the Pennsylvania State University and resides in Centre County, Pennsylvania.

6. Defendant, Charles E. Galgoci is employed by the Pennsylvania State University as Assistant to the Dean of the Graduate School, and resides in Centre County, Pennsylvania.

7. Defendant, James B. Bartoo is employed by the Pennsylvania State University as Dean of the Graduate School, and resides in Centre County, Pennsylvania.

8. Plaintiff, Thomas J. Ross, is an individual residing at Camp Hill, Pennsylvania.

9. Plaintiff graduated from Drexel University in June of 1976 with a Bachelor of Science degree in Mechanical Engineering.

10. Plaintiff was mailed an Admission Notification and Authorization to Enroll dated March 19, 1976 from the Pennsylvania State University.

11. Plaintiff was a candidate for the Master of Science degree in the field of Ceramic Science.

12. In a letter dated March 19, 1976, addressed to Plaintiff and signed by Guy E. Rindone, Plaintiff was offered a halftime graduate assistantship carrying a stipend of $4032.00 for the calendar year on a National Aeronautics and Space Administration Impact Project dealing with impact and high temperature stress of silicone carbide, said project under the direction of Richard C. Bradt. The assistantship was tuition free. In addition, the program is considered by the Internal Revenue as a tax free gift to the student. It was stated that the assistantship would commence with the summer term, June 7, 1976.

13. The research work to be performed by Ross for the graduate assistantship was to be utilized as Ross' thesis research in partial fulfillment of the requirements of the Master of Science degree.

14. By letter dated March 29, 1976, Plaintiff accepted the offer of Defendant Rindone as specified in Defendant Rindone's letter of March 19, 1976.

15. Plaintiff attended the Pennsylvania State University as a graduate student in the Ceramic Sciences program of the College of Earth and Mineral Sciences for the Summer, 1976 academic term and the Fall, 1976 academic term.

16. The grant renewal proposal # NSG–3016 submitted by Richard C. Bradt with respect to the project in which Plaintiff was engaged and said proposal submitted January 9, 1976 outlined objectives for three years. The document also stated that a graduate student would be obtained to replace H. Abe by June, 1976 and this student would do a M.S. thesis on the high temperature strength and creep testing of the materials as outlined in the original proposal. This student was Tom Ross, Plaintiff. The actual grant was for a period of one year commencing June, 1976. A renewal contract was granted for the year commencing June, 1977.

17. By letter dated November 29, 1976 Defendant Rindone informed Ross that commencing with the Winter Term, 1976–77, Plaintiff would be terminated as a graduate student for poor scholarship.

18. Bradt requested immediate termination of Ross as a graduate assistant by virtue of a memo dated November 24, to Rindone.

19. On the basis of an oral request from Dr. Rindone, Defendant Galgoci issued a Prevent Registration Notice over the signature of Ernest H. Ludwig, Associate Dean of the Graduate School which prevented Plaintiff from registering as a student for the Winter Term, 1976–77.

20. A copy of Defendant Rindone's letter of termination was forwarded to the office of Associate Dean Ludwig and on the basis of Rindone's letter, Dean Ludwig directed on December 15, 1976 that the note "program terminated by Department, 11/29/76" be entered on the Graduate School transcript of Plaintiff.

21. The rules P–22 to P–29 of the Academic Rules adopted by the University Faculty Senate, relating to unsatisfactory scholarship, were not applied or utilized in the termination of Plaintiff as a graduate student for unsatisfactory scholarship.

22. There is no University Policy which provides for or permits a hearing for a graduate student who is terminated for unsatisfactory scholarship.

23. The Plaintiff was not provided with the opportunity for a hearing with respect to the action of Defendant Rindone terminating Plaintiff for unsatisfactory scholarship.

24. The documents which govern the relationship between graduate students at the University and Penn State are:

The Pennsylvania State University Bulletin—Graduate Degree Programs

Manual for Graduate Students

Procedures for Graduate Student & Faculty Resolution of Graduate Student Problems.

With respect to the Policies and Rules for students, it cannot be stipulated as to whether the section on academic rules, beginning at page 4 to page 13, is applicable to graduate students· but it is stipulated that the remainder is applicable to all students.

25. The academic rules adopted by the faculty senate are intended by the University to apply only to undergraduate students.

26. The academic rules adopted by the faculty senate have not been applied to graduate students.

27. It was Plaintiff's opinion that the academic rules were to apply to the undergraduate and graduate students.

28. A document entitled Constitution, By-Laws and Standing Rules of the University Faculty Senate: The Pennsylvania State University, 1975–76 Article VII Delegation of Responsibility provides in Section II that the faculty of the graduate school, as represented by the graduate council, is delegated responsibility for the interest of the graduate school except in those matters which have university-wide implications; it shall administer its own affairs subject to review by the Senate. The Constitution, by-laws and standing rules of the faculty senate are not generally circulated to students, graduate or undergraduate.

29. Neither Defendants nor Plaintiff utilized the procedures outlined in Procedures for Graduate Student and Faculty Resolution of Graduate Student Problems.

30. The position of Graduate Assistant is only available to a person who is enrolled as a graduate student at the Pennsylvania State University.

31. As a result of the Plaintiff's termination as a graduate student at the Pennsylvania State University, he was no longer eligible for appointment as a graduate assistant. His appointment was terminated by Defendant Rindone by virtue of the Notice of Termination.

32. A graduate student can expect to retain a graduate assistantship for three to four academic terms (one academic year) so long as the student remains in good academic standing or without misconduct at the University.

33. Termination as a graduate student in the Ceramic Sciences program at the Pennsylvania State University for unsatisfactory scholarship will be detrimental to the Plain-

tiff's ability to be admitted to a graduate program in ceramic science or in the field of material sciences generally.

34. The work of a graduate student who partakes in a graduate assistantship is an important part of the student's education.

35. A Master's degree in ceramic science is worth more in a monetary sense than a Bachelor's degree in the same field assuming the holder of the degree seeks to gain employment utilizing his educational background.

36. Work on NASA grants is subject to the provisions of the Civil Rights Act of 1964, and the NASA implementing regulations. (14 C.F.R. 1250).

37. The document entitled Policies and Rules for Students 1975–76 applied to Thomas Ross with respect to the University's academic or other termination of Plaintiff.

38. Plaintiff believed that the document referred to in the finding above applied to him.

39. Plaintiff's belief that said document applied to him was reasonable.

40. A Master's Degree in Ceramic Science is more economically valuable to persons desiring to work in the field of ceramic sciences than a Bachelor of Science degree would be.

41. A graduate school, prospective employers and another offeror of a graduate assistantship in the science field would be very much concerned about an individual who was dismissed from a graduate school or a graduate assistantship. Such dismissal is a very serious matter and would cause scrutiny into the individual's background and record. Such dismissal would bear a significant black mark against a person's name that would create difficulty for him in related endeavors.

42. An education, particularly a graduate education, may constitute a necessary ingredient of economic success in later life.

43. A graduate student who is found not to meet the standards of graduate students may find it difficult to enter another graduate school, to secure another graduate assistantship or to obtain desirable employment.

44. A graduate student whose research on his graduate assistantship is found to be substandard may have considerable difficulty in entering another graduate school, in securing desired employment and in satisfying others generally that he is academically qualified to practice his chosen profession.

45. A post-graduate college education is one avenue to a professional skill to which considerable remuneration may attach.

## II. Discussion.

Ross attended the Pennsylvania State University (Penn State) as a graduate student in the ceramic science program of the College of Earth and Mineral Sciences for the Summer of the 1976 academic year and the Fall of the 1976 academic year. In a letter dated March 19, 1976 addressed to Ross he was offered a halftime graduate assistantship carrying a stipend of $4,032.00 for the calendar year to work on a National Aeronautics and Space Administration Impact project dealing with the high temperature stress of silicone carbide. The assistantship was tuition free and was considered by the Internal Revenue Service as a tax-free gift to Ross. Ross was to be permitted to utilize the work he performed with respect to his research thesis as partial fulfillment of the requirements of the Master of Science Degree. Ross accepted the offer by a letter dated March 29, 1976. By a letter dated November 29, 1976, Defendant Rindone, Professor of Ceramic Science at Penn State University, and Chairman of the Ceramic Science Section of the Department of Interior Sciences, College of Earth and Mineral Sciences of Pennsylvania State University, informed Ross that beginning with the Winter Term 1976–1977, he would be terminated as a graduate student for poor scholarship. Defendant Richard C. Bradt, a Professor of Ceramic Science at Penn State University asked for the immediate termination of Ross as a graduate student by a memo dated November 24, 1977 to Dr. Rindone. On the basis of an oral request from

Dr. Rindone, Defendant Galgoci, Assistant to the Dean of the Graduate School of Pennsylvania State University issued a Prevent Registration Notice, which stopped Ross from registering as a student for the Winter Term 1976–1977.

The parties agree that there is no University policy which provides for or permits a hearing for a graduate student who is terminated for unsatisfactory scholarship. Ross was given no hearing with respect to his termination as a graduate student and with respect to his termination as a graduate assistant. The post of graduate assistant can only be held by an individual who is a graduate student at Penn State University.

■ First, Ross contends that his dismissal as a student from Penn State University because of poor scholarship without a prior hearing violated his right to due process pursuant to the Fourteenth Amendment of the United States Constitution because it denied him a property interest. To determine whether Ross was deprived of property without due process of law requires a two-step inquiry. First, the Court must determine the extent of Ross' property interest, if any, in this context. Then, if Ross has a property interest which has been impaired by the action of the Defendants, it becomes necessary to analyze whether the deprivation of property interest violated the due process clause of the Fourteenth Amendment. *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31, 38 (3d Cir. 1974), vacated and remanded, on other grounds, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), 538 F.2d 53 (3d Cir. 1976); *Chung v. Park*, 514 F.2d 382 (3d Cir. 1975), cert. denied, 423 U.S. 948, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975); *DiLuigi v. Mier*, 430 F.Supp. 1098 (M.D.Pa.1977); *Farr v. Chesney*, 437 F.Supp. 521 (M.D.Pa.1977). In *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) the United States Supreme Court stated that a property interest in public employment could be created by ordinance or by implied contract but in both cases the sufficiency of the claimed entitlement must be decided by reference to state law. The Constitution does not create a property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Thus, this Court must decide whether Ross had a property interest under the law of Pennsylvania in continuing his course of study as a graduate student at Penn State and in his employment as a graduate student at that institution. Pennsylvania courts have long recognized that the relationship between a student and a private college is contractual. *Barker v. Bryn Mawr College*, 278 Pa. 121, 122 A. 220 (1923). As a result students have been permitted to bring contract actions against institutions of higher learning for alleged breaches of that contract. *Strank v. Mercy Hospital of Johnstown*, 383 Pa. 54, 117 A.2d 697 (1955). The fact that Ross attended a public institution does not provide a sufficient basis for changing this approach. A student has a reasonable expectation based on statements of policy by Penn State and the experience of former students that if he performs the required work in a satisfactory manner and pays his fees he will receive the degree he seeks. Pursuant to state law, Ross as a graduate student had a property interest in the continuation of his course of study and had no such interest in any specific procedures. This is not the situation which existed in *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974) where an individual had a property interest in receiving certain specified hearings. Official publications of Penn State contain no specified procedures concerning termination of a graduate student for unsatisfactory scholarship. The "Academic Rules" contained in the pamphlet "Policies and Rules for Students" contain a section entitled "Unsatisfactory Scholarship" which set forth various procedures including a warning that academic performance is not adequate. The parties agree that these rules apply only to undergraduate students and have not in fact been applied to graduate students. Ross contends that he had a reasonable expectation that such procedures would be afforded to

him. Because of the practice of the University and the failure of the procedures specifically to mention graduate students, the Court finds Ross' argument unconvincing.

■ Because the Court has concluded that Ross had a property interest in the continuation of his education as a graduate student in the ceramics program at Penn State, the Court must decide if Ross received procedures adequate to meet the standards of the due process clause of the Fourteenth Amendment. Due process usually requires at a minimum that a deprivation of property be preceded by a notice and an opportunity for a hearing appropriate to the nature of the case. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). But due process does not require that any specific procedure be applicable in every situation. *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court set forth the following factors for identifying specific requirements of due process:

(1) The private interest of an individual that will be affected by the official action;

(2) The risk of an erroneous deprivation of such interest through the procedures used and the probable values of additional procedural safeguards; and

(3) The Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. The private interests that would be affected by the action of the Defendants is the continuance of the Plaintiff's education. In our society such an interest is considerable and must be given great weight. The second factor that must be dealt with is the probable value of any additional or substitute procedural safeguards. The Plaintiff contends in his brief, and this has not been disputed by the Defendants, that the decision to terminate a graduate student for poor scholarship is not automatically made when he fails to attain a 3.0 cumulative average at some point during his graduate school career. If this determination to terminate a graduate student was automatically made, based solely on his failure to attain a given grade point average, it seems to the Court that no purpose would be served by a hearing unless the mathematical accuracy of the academic average was in dispute.

■ The Court has been unable to find and the parties have not brought to its attention any regulation of Penn State which requires the expulsion of a graduate student who fails to maintain a given cumulative average. Regulations of Penn State do require that a graduate student obtain a cumulative average of 3.0 in order to graduate. The letter of November 29, 1976 which was sent to Ross by Defendant Rindone informed him that he would be terminated as a graduate student because of poor scholarship and indicated that regardless of the final exam scores which Ross might receive in the courses in which he was then currently enrolled he could not receive a cumulative average for the two terms he had been at Penn State higher than 2.55. There is no indication as to whether Ross could have obtained a cumulative average of 3.0 by the time of graduation. Consequently, the Court is not faced with an administrative decision which is based upon mathematical criteria alone. The decision to terminate a student for poor scholarship is subject to a certain extent and depends upon ascertaining his motivation and attitude toward his academic work. A hearing would allow Ross to explain any reason for his poor scholarship and would permit the university officials better to determine whether Ross had the potential to achieve the intellectual level required of graduate students in the ceramics program at Penn State.

The administrative burden which would be caused by holding such a hearing appears to be minimal. Full adversary proceeding would not be required. Ross would only have to be given an opportunity to explain the reasons for his poor scholarship and to provide any information which might lead the administration to conclude that Ross' performance in the future would

be satisfactory. Nothing in this Opinion indicates that a due process hearing is required every time a student is terminated for poor scholarship. When that decision is based on the failure to achieve a stated grade point average and the student is always terminated for failure to achieve that average regardless of any mitigating circumstances no purpose would be served by a hearing. The due process clause does not mandate procedural process as an end in itself. *Stolberg v. Caldwell*, 423 F.Supp. 1295, 1300 (D.Conn.1976). See *Wehner v. Levi*, 562 F.2d 1276 (D.C.Cir. 1977).

■ Second, Ross contends that he had a property interest in the continuation of his job as a graduate assistant. According to the Defendants, he was terminated from that position because of his failure to maintain his academic standing as a graduate student. A graduate assistant at Penn State is required to be a graduate student. To be entitled to the protection of due process Ross must show that his property interest stems from state law. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). The parties have stipulated that a graduate student can expect to obtain a graduate assistantship for from three to four academic terms so long as the student remains in good academic standing without misconduct at the university. There was no contract in existence by which the Defendants obligated themselves to hire Ross for any definite period of time beyond one year. This contract was not binding. In *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960), the Supreme Court of Pennsylvania stated that a public authority in the absence of a specific grant of power from the legislature lacks the ability to enter into a binding employment contract with an employee. Although the State Supreme Court indicated that its decision did not concern contracts for work on particular projects being carried out by a public body which might necessitate the temporary services of some specialist, this exception does not apply to Ross. At the time he commenced his work as a graduate assistant he was not a specialist but a relative novice in the field of ceramics. No contention has been made by Ross that he was a specialist or that he is a specialist in the field of ceramics. Although the legislature has permitted state colleges and Universities to enter into binding employment contracts with college professors, the Plaintiff has not shown that this grant of authority applies to graduate assistants. In the light of the foregoing, Ross' contention that he had a property interest pursuant to state law in his position as a graduate student which necessitated protections of due process before he could be terminated will be denied.

■ Third, Ross contends that he was entitled to the protection of due process in his termination as a graduate student and as a graduate assistant because of his liberty interest in reputation, honor, and integrity. Ross has not shown that the reasons for his termination as a graduate student and as a graduate assistant have been made public. The Defendants contend that under the rules of Penn State, the fact that he was terminated for poor scholarship would not be made public unless it is at his request. In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court held that Bishop's liberty interests were not implicated by his termination because the reasons for discontinuing him although potentially damaging to his professional reputation were never made public. In addition, Ross has not alleged in his complaint or in his brief that the conclusion that he had engaged in poor scholarship was false. In *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), (per curiam), the Supreme Court stated that a complaint alleging an injury to a policeman's reputation in connection with employment termination did not set forth a cause of action for a violation of the policeman's liberty interest because the complaint did not claim that the charges brought against the employee were false.

In addition, the determination of the Defendants that Ross was a poor graduate student does not constitute the kind of injury to reputation entitled to be protected by

the liberty clause of the Fourteenth Amendment. In *LaBorde v. Franklin Parish School Board*, 510 F.2d 590 (5th Cir. 1975), the United States Court of Appeals for the Fifth Circuit held that a decision not to renew a contract of a teacher because of dissatisfaction with his teaching methods and his classroom conduct did not require a due process hearing because the liberty interests as described in *Roth* had not been infringed. In *Roth* the Supreme Court indicated that the liberty clause applied to allegations of dishonesty, immorality, or the imposition of a stigma or disability that foreclosed the freedom to take advantage of other employment opportunities. The United States Court of Appeals concluded that the mere fact that a discharged public employee might find it difficult to obtain another position did not implicate the liberty clause. Accord *Blair v. Board of Regents*, 496 F.2d 322, 324 (6th Cir. 1974); *Russell v. Hodges*, 470 F.2d 212 (2d Cir. 1972); *Berry v. Hamblin*, 356 F.Supp. 306 (M.D.Pa.1973).

Ross contends that because according to the facts stipulated by the parties he will have a difficult time obtaining admittance to another graduate program of ceramics, his liberty interest have been violated. If the Court would accept this view, every student at a state school who is dismissed for academic reasons would be entitled to a due process hearing on the basis of his liberty interest. The Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) stated that when a state in declining to reemploy an individual imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities his liberty interest might be implicated. The Court used as an example a state invoking a regulation to bar the respondent in *Roth* from other public employment in state universities. Ross has not been barred from obtaining admittance to other institutions of higher learning. His chances have been reduced. The effect of his dismissal is still speculative. See *Russell v. Hodges*, 470 F.2d 212 (2d Cir. 1972).

Ross bases his liberty contention primarily on the opinion of the United States Court of Appeals for the Eighth Circuit in *Horowitz v. Board of Curators of University of Missouri*, 538 F.2d 1317 (8th Cir. 1976), cert. granted, 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 355. In that case, Horowitz, a medical student, was dismissed because of an alleged inability to deal with others on a personal basis, an inability to meet critical responsibilities on time and gracefully, alleged inadequate attention to personal appearance, including washing of hair and grooming, and failure to direct criticisms and objections clearly to a faculty advisor. The Court held that because Horowitz's dismissal from medical school would make it difficult or impossible for her to obtain employment in a medically related field or admittance to another medical school that her liberty interests had been jeopardized and thus she was entitled to a due process hearing. This Court finds the approach in *Horowitz* unconvincing for the reasons previously stated. In the light of the foregoing, the Court will deny Ross' contention that his dismissal as a graduate student and as a graduate assistant violated his liberty interest pursuant to the Fourteenth Amendment of the United States Constitution.

Fourth, Ross contends that his dismissal as a graduate student and as a graduate assistant at Penn State was in violation of his contract. Although Ross' relationship as a graduate student with Penn State was contractual, according to that agreement, he could be dismissed for poor scholarship. Although the due process clause requires that he be accorded a hearing because he had a property interest under state contract law, his dismissal was not a breach of contract. His tenure as a graduate assistant depended upon his remaining in good standing as a graduate student. In addition, Ross has not shown that Penn State had the authority to enter into a contractual relationship with him in his role as a graduate assistant. See *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960). Consequently, the Court will deny Ross' contention that his contract

of employment was breached by Penn State. For the above reasons, the Court rejects Ross' contention that the Defendants intentionally or negligently interfered with his contract.

### III. Conclusions of Law.

1. Ross has a property interest in a continuation of his studies as a graduate student.

2. The failure to afford Ross a hearing at which he could explain any mitigating circumstances for his poor academic scholarship before terminating him as a graduate student violated his right to due process pursuant to the Fourteenth Amendment of the United States Constitution.

3. Ross has no property interest pursuant to Pennsylvania law in his continuation as a graduate assistant at Pennsylvania State University.

4. Ross' termination as a graduate assistant at Pennsylvania State University did not constitute deprivation of property in violation of the due process clause of the Fourteenth Amendment.

5. Ross' termination as a graduate student did not violate his liberty interests pursuant to the Fourteenth Amendment of the United States Constitution.

6. Ross' termination as a graduate assistant did not violate his liberty interest pursuant to the Fourteenth Amendment of the United States Constitution.

7. Ross' termination as a graduate assistant and as a graduate student did not violate his contract with Penn State and did not constitute malicious interference with his contract.

An appropriate order will be entered.

### ORDER

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

■ This case was submitted to the Court on stipulated facts. On January 6, 1978 this Court issued an Opinion and an Order in which it concluded that the Plaintiff's due process rights were violated be-

cause of his dismissal as a graduate student from the Pennsylvania State University without a prior hearing. On February 9, 1978 the Defendants submitted to the Court a motion to amend the findings of fact contained in the January 6, 1978 opinion accompanied by a brief. On February 17, 1978 the Plaintiff submitted to the Court a brief in response to the Defendants' motion. Both the Defendants and the Plaintiff agree that findings of fact 37 through 45 were not stipulated to by the parties. These findings of fact were contained in the Plaintiff's pre-trial document § 5.307. The Court worked from the stipulated facts. Apparently when the Opinion was typed the Secretary was given the Plaintiff's proposed facts instead of the stipulated facts. The Court in its Opinion and Order did not consider findings of fact 37 through 45.

F.R.Civ.P. 52(b) states that upon motion of a party made not later than 10 days after entry of judgment the Court may amend its findings and make additional findings and may amend the judgment accordingly. The Defendants' motion was submitted more than 10 days after the Court issued its Opinion and Order. The Court has not entered a judgment in this case because the damage phase of this matter is scheduled for trial in March, 1978. Because no judgment was entered by the Court the 10-day period for a motion to amend findings of fact has not expired. In addition, even if that time period had expired, the Court believes that it has the authority to correct inadvertent clerical errors in its findings of fact at any time. Consequently, the Court will delete findings of fact 37 through 45 from its Opinion of January 6, 1978.

### NOW, THEREFORE, IT IS ORDERED THAT:

Findings of fact 37 through 45 are deleted from the Court's Opinion of January 6, 1978 issued in the above-captioned case.