Denise HIESTER, et. al., Plaintiffs,

v.

Sergeant Ronald FISCHER,
et. al., Defendants.

No. CIV.A. 99–2963.

United States District Court,
E.D. Pennsylvania.

Sept. 1, 2000.

Mark W.F. Adams, Law Offices of Adams & Buonocore, Philadelphia, PA, for plaintiffs.

C. Alexa Abowitz, David J. MacMain, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Randall J. Henzes, Office of Attorney General, Philadelphia, PA, for defendants.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

The plaintiff, Denise Hiester ("plaintiff"), brought this sex discrimination action against the defendants, Sergeant Ronald Fischer, Sergeant Gordon J. Roberts, Captain Francis Drexler, and the City of Reading ("the City") (collectively "defendants"). Specifically, plaintiff alleges that while she was a cadet at the Basic Police Training Course for the City of Reading ("the Academy"), she was treated more harshly than other cadets because of her sex. Plaintiff also alleges that defendants failed to provide a grievance procedure for pursuing sex discrimination complaints at the Academy. Finally, plaintiff brought a claim for assault and battery against defendant Fischer. At the close of discovery, defendants filed a motion for summary judgment on each of plaintiff's claims. For the following reasons, defendants' motion will be granted in part.

## II. FACTS

The following facts are either uncontested or viewed in the light most favorable to plaintiff. Plaintiff was admitted as a cadet into the Academy in August, 1997. The Academy is operated by the City of Reading and designed to provide prospective police officers with the appropriate training.[1] Defendant Fischer is an instructor at the Academy as well as an officer in the Reading Police Department. Defendant Roberts is the director of the Academy and one of defendant Fischer's supervisors. Defendant Drexler is another instructor at the Academy and also one of defendant Fischer's supervisors.

On November 3, 1997, plaintiff's class at the Academy, under the instruction and command of defendant Fischer, began the physical training component of its training. On that date, while the cadets were assembled in front of defendant Fischer, defendant Fischer confronted plaintiff in the presence of other cadets, and in a loud and intimidating voice, asked plaintiff "if she wanted him" and further screamed at plaintiff, "what are you looking at me for? Do you like me? You must like me for staring at me." Pl.'s Mem., Ex J., p. 68, Ex. K., p. 17. Subsequently, in March, 1998, at another physical training exercise, again in the presence of other cadets, defendant Fischer "asked [plaintiff] if she bleached her hair and made additional comments regarding her eyebrow color." Pl.'s Mem., Ex. M. Although there was no grievance procedure in place for pursuing sex discrimination complaints at the Academy at the time of the incidents described above, plaintiff complained to defendant Drexler about defendant Fischer's "humiliation in training." Def.'s Mem., Ex. G, p. 186. In turn, defendant Drexler discussed plaintiff's complaint with defendant Roberts, but neither defendant Drexler nor defendant Roberts took any remedial action pursuant to plaintiff's complaint.

Sometime thereafter, plaintiff was injured during another training exercise. As part of their training, the cadets, including plaintiff, were instructed to close their eyes and turn themselves around in a circle, at which time an instructor would push the cadet toward a brick wall. At that point, plaintiff was instructed to open her eyes, fall into the wall as she had been instructed so as to avoid injury, and reorient herself to her surroundings as quickly as possible. During her participation in this exercise, plaintiff injured her wrist when defendant Fischer pushed her toward the brick wall.

After plaintiff was injured, she spoke with defendants Fischer and Roberts about her future at the Academy. Plaintiff was informed that she could attempt to complete her training with the remainder of her class on schedule, complete her

---

**1.** Under Pennsylvania law, all police officers are required to undergo the type of training offered at the Academy. *See* 53 Pa. Cons.Stat. Ann. § 2161 *et seq.*

training with the next incoming class at the Academy, or hire a private instructor to complete her required training. Plaintiff ultimately chose to leave the Academy and completed her training at the Ambler Police Academy, where she graduated as a certified municipal police officer in July, 1998.

Plaintiff's theory of the case is that defendant Fischer treated her more harshly than other cadets at the Academy because of her sex in violation of 42 U.S.C. § 1983 and the Equal Protection Clause ("plaintiff's equal protection claim"). Plaintiff contends that the City and defendants Drexler and Roberts are personally connected to defendant Fischer's conduct such that they may be held liable under § 1983. Plaintiff also contends that defendants Fischer, Roberts, and Drexler conspired to treat her differently because of her sex in violation of 42 U.S.C. §§ 1983 & 1985 and the Equal Protection Clause. Plaintiff next argues that defendants failed to provide a grievance procedure for pursuing sex discrimination complaints at the Academy in violation of 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment ("plaintiff's due process claim"). Finally, plaintiff contends that defendant Fischer committed an assault and battery against her when he pushed her against the brick wall and caused physical injuries to her wrist.[2]

Defendants counter that defendant Fischer treated plaintiff just as he treated all of the other cadets, male and female, at the Academy and that the treatment was consistent with the pedagogical need to teach prospective police officers how to remain in control in the face of provocation. Defendants also argue that, even assuming there are genuine issues of material fact as to whether defendant Fischer treated plaintiff differently because of her sex, defendants Roberts, Drexler, and the City do not possess the required degree of personal involvement with defendant Fischer's conduct to be held liable under § 1983. Defendants further contend that because plaintiff has not been deprived of any constitutional right, or in the alternative, that plaintiff has failed to establish the existence of a conspiracy, plaintiff's conspiracy claim brought under 42 U.S.C. §§ 1983 & 1985 must fail. Defendants next argue that plaintiff has not established a constitutional right to a grievance procedure for pursuing sex discrimination complaints at the Academy which defendants could have violated. Finally, defendant Fischer argues that plaintiff's assault and battery claim must fail because he lacked the intent to injure plaintiff, or in the alternative, that plaintiff consented to the physical contact which allegedly caused her injuries.

## III. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the movant is the party bearing the burden of proof at trial, it must come forward with evidence entitling it to a directed verdict. *Paramount Aviation Corp. v. Augusta,* 178 F.3d 132, 146 (3d Cir.1999), *cert. denied,* — U.S. ——, 120 S.Ct. 188, 145 L.Ed.2d 158 (1999). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106

**2.** Plaintiff originally asserted claims against additional defendants and additional claims against the named defendants, however, by stipulation or order of the court, those claims and defendants have been dismissed. *See* Stipulation for the Voluntary Dismissal of Certain Parties and Counts from Plaintiffs' Complaint (doc. no. 13) and the Court's Or-

ders of August 31, 1999 (doc. nos. 7 & 8). The remaining counts in plaintiff's complaint include claims of "Negligence and Recklessness" and Negligent Infliction of Emotional Distress against defendant Fischer, however, in her response to defendants' motion for summary judgment, plaintiff has agreed to dismiss those claims. Pl.'s Mem., p. 25.

S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the nonmoving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the nonmovant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

IV. ANALYSIS

■ Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a § 1983 violation, a plaintiff must "demonstrate a violation of a right protected by the Constitution ... that was committed by a person acting under the color of state law."

*Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir.2000). There is no question that defendants are state actors in this case. The issues are whether defendants' conduct violated the equal protection and due process clauses of the Constitution.

A. *Plaintiff's Equal Protection Claim*

Defendants argue that plaintiff has failed to raise a genuine issue of material fact as to whether she was treated more harshly than other cadets in her class at the Academy because of her sex. In response, plaintiff relies upon two instances which, she alleges, raise a genuine issue of material fact as to whether she was treated more harshly because of her sex. First, plaintiff points to her initial encounter with defendant Fischer during which he asked plaintiff, in the presence of other cadets, "if she wanted him" and further screamed at plaintiff, "what are you looking at me for? Do you like me? You must like me for staring at me." Pl.'s Mem., Ex J., p. 68, Ex. K., p. 17.[3] Next, plaintiff relies upon the March, 1998 confrontation with defendant Fischer, during which defendant Fischer, also in the presence of other cadets, "asked [plaintiff] if she bleached her hair and made additional comments regarding her eyebrow color." Pl.'s Mem., Ex. M.

■ The Equal Protection Clause provides, in relevant part, "[N]or shall any State ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. In order to prevail on an equal protection claim for sex discrimination, a female plaintiff must prove "that she was subjected to 'purposeful discrimination' because of her sex." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir.1997) (*citing Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir.1992)); *see also Andrews v. City of*

---

3. Officer Klock, who is another instructor at the Academy, followed defendant Fischer's comments by telling plaintiff that "she was getting Sergeant Fischer in trouble, that he was a married man." Pl.'s Mem., Ex. J, p. 70. Officer Klock is not a defendant in the instant action, and plaintiff has not argued that his statement should be attributed to defendant Fischer. Therefore, Officer Klock's statement is irrelevant to plaintiff's equal protection claim.

*Philadelphia,* 895 F.2d 1469, 1478 (3d Cir. 1990).

In order to show that she was subjected to discrimination "because of her sex," a female plaintiff bears the burden of showing that her "sex was a substantial factor in the discrimination and that if she had been a male, she would not have been treated in a similar manner." *Kent v. Henderson,* 77 F.Supp.2d 628, 635 (E.D.Pa.1999) (*citing Andrews,* 895 F.2d at 1485). While sexual overtones are not necessary to show purposeful discrimination based upon a female plaintiff's sex, the conduct of which the plaintiff complains must nonetheless be motivated by her sex. *Durham Life Insurance Co. v. Evans,* 166 F.3d 139, 148 (3d Cir.1999) (*citing Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1083 (3d Cir.1996)).[4] To put it another way, "not every friction ... between a man and a woman supports a claim for sexual [discrimination]." *Kent,* 77 F.Supp.2d at 635. The essence of a sex discrimination claim brought under the Equal Protection Clause is not that a female plaintiff was treated badly, but rather that she was treated differently than similarly situated males because she is a woman.[5]

*Kent* is a clear illustration of this rule. In *Kent,* the plaintiff's co-worker, in an attempt to intimidate the plaintiff, inquired of the plaintiff's supervisor into plaintiff's work schedule, left clues that he had been present at plaintiff's workplace without the plaintiff's knowledge, and caused another person to make "any angry face at" the plaintiff, all in a harassing manner. *Kent,* 77 F.Supp.2d at 630 (quotation omitted). The court granted summary judgment for the defendant because although the plaintiff could prove harassment by her co-worker, she was unable to show that she was treated badly by her co-worker because she is a woman. *Id.* at 634–35. Similarly, in this case, the uncontroverted evidence of record establishes that, although plaintiff may have treated badly at the hands of defendant Fischer, she was not the subject of purposeful discrimination because of her sex.

As a preliminary matter, defendant Fischer's role at the Academy must be placed in context. As the physical training instructor at the Academy, defendant Fischer explains to the cadets that his actions are "not to be taken personally and there's nothing meant by it other than a test of their control," and subsequently "tr[ies] to be the bad guy, from the very beginning." Pl.'s Mem., Ex. H, pp. 71–71, 77. The rationale for defendant Fischer's angry and confrontational tone toward the cadets is that:

> they're going to be yelled at, they're going to have their buttons pushed. I'm going to try to do that as much as possible because they need to be under control as police officers to control other people on the street. If they—someone on the street would come up and yell and scream at them in their face, say nasty things to them, they can't react to that. They have to be under control and [verbal harassment is designed] to teach them to do that.

Pl.'s Mem., Ex. H, pp. '31–32. Plaintiff does not challenge the pedagogical need for this type of training for future police officers. Neither does plaintiff dispute

**4.** *Kent* and *Durham Life* both addressed the requirement that a female plaintiff establish discrimination "because of her sex" under Title VII, not § 1983 and the Equal Protection Clause. The determination of whether a female plaintiff faced intentional discrimination "because of her sex," however, is identical under either Title VII or § 1983 and the Equal Protection Clause. *See Andrews,* 895 F.2d at 1483, n. 4 (noting that standard for proving discrimination because of the plain-

tiff's sex is identical under § 1983 (Equal Protection Clause) and Title VII).

**5.** Or as the notorious Professor Higgins explained in defense of his poor treatment of Eliza Doolittle, "the question is not whether I treated [Eliza] rudely, but whether I treat anyone else better." *My Fair Lady* (Twentieth Century Fox 1964).

that defendant Fischer, who is a fifteen (15) year veteran of the Reading Police Department, *see* Pl.'s Mem., Ex. H, p. 12, is qualified to know what police officers experience "on the street."

With defendant Fischer's role at the Academy in mind, the court turns to defendant Fischer's statements which plaintiff alleges support her equal protection claim.

### 1. *Confrontation between plaintiff and defendant Fischer on the first day of physical training*

Plaintiff points to no evidence of record which shows that defendant Fischer's comments which occurred on the first day of physical training were motivated by her sex. To the contrary, the undisputed evidence in the record establishes that defendant Fischer directed similar comments to male cadets. Defendant Fischer explained, when asked whether he told plaintiff "do you want me?," that he "tell[s] that to the male and female cadets when they make eye contact, do they want me as, do you want a part of me, do you want a piece of me. They're challenging my authority when they make eye contact and they're told not to do that." Def.'s Mem., Ex. F, pp. 37–38, Pl.'s Mem., Ex. H, p. 75. Tarra Buzza, who was one of plaintiff's fellow cadets at the Academy, personally witnessed defendant Fischer screaming, "[w]hat are you looking at me for? Do you

like me? You must like me for staring at me" at two male cadets. Pl.'s Mem., Ex. K, p. 17. Kelly Still, who is also a former colleague of plaintiff at the Academy, testified that defendant Fischer asked a male cadet, "do you like me, you're staring at me?". Pl.'s Mem., Ex. O, p. 14–15. In light of this testimony, and the absence of any conflicting evidence offered by plaintiff, the court concludes that plaintiff has failed to raise a genuine issue of material fact as to whether her sex was a "substantial factor" in her treatment or that "if [plaintiff] had been a male, she would not have been treated in a similar manner." *Andrews*, 895 F.2d at 1485 (citations omitted).

### 2. *March, 1998 confrontation*

Plaintiff has also failed to point to evidence of record which raises a genuine issue of material fact as to whether defendant Fischer's comment regarding plaintiff's hair color was motivated by plaintiff's sex.[6] According to plaintiff's own answers to interrogatories, defendant Fischer directed comments regarding a cadet's physical appearance, which are similar to the one he directed toward plaintiff, toward male cadets as well.[7] Specifically, according to plaintiff, defendant Fischer referred to Todd MacFarlane, a male cadet in plaintiff's class at the Academy, and other similarly situated cadets as "Pig Pen" and "Fat

---

**6.** The record contains contradictory evidence offered by plaintiff as to whether defendant Fischer actually made the statement attributed to him. On November 15, 1999, when asked at her deposition to identify the discriminatory comments which defendant Fischer made about her physical appearance, plaintiff did not mention a comment about her hair color. Def.'s Mem., Ex. H, p. 174. However, in January, 2000, in response to defendants' interrogatories, plaintiff stated that defendant Fischer "asked [her] if she bleached her hair." Pl.'s Mem., Ex. M. Plaintiff, of course, may not raise a genuine issue of material fact simply by showing that, in the past, she has provided conflicting information. However, defendant Fischer testified that he "think[s][he] made a reference to [plaintiff's] being blonde...." Pl.'s Mem., Ex. H, p. 73. For purposes of deciding the in-

stant motion and viewing the evidence in the light most favorable to plaintiff, the court concludes that defendant Fischer made the comment which plaintiff attributes to him.

**7.** The court is unable to evaluate plaintiff's claim based upon defendant Fischer's alleged comments about plaintiff's eyebrow color. Defendant Fischer did not recall making any such comments, *see* Pl.'s Mem., Ex. H, pp. 72–73, and plaintiff has offered no evidence of what specific comments defendant Fischer directed toward plaintiff. Without the specific comments, the court is unable to determine, in the abstract, whether "comments regarding [plaintiff's] eyebrow color" evidence purposeful discrimination because of plaintiff's sex.

Boy," respectively. Def.'s Mem., Ex. L. Given that the unrebutted evidence of record in this case shows that defendant Fischer directed comments concerning their physical appearance to male cadets who were similarly situated in the presence of other cadets, plaintiff has failed to raise a genuine issue of material fact as to whether her sex was a "substantial factor" in her treatment, or that "if [plaintiff] had been a male, she would not have · been treated in a similar manner." *Andrews*, 895 F.2d at 1485 (citations omitted).[8] Therefore, defendants are entitled to judgment on plaintiff's equal protection claim.[9]

### B. *Plaintiff's Due Process Claim*

The Due Process Clause of the Fourteenth Amendment provides, in pertinent part, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const.Amend. XIV. In order to succeed on her due process claim, plaintiff must first show that a protected property interest[10] is implicated. *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir.1984). "To have a property interest in a benefit, a person clearly must have more than the abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property

interests ordinarily are not created by the Constitution. *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1396 (3d Cir.1991). Rather, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Roth*, 92 S.Ct. at 2709.

When addressing a plaintiff's due process claim brought under § 1983, the court must first "identify the exact contours" of the constitutional right which the plaintiff asserts in order to determine whether the plaintiff has alleged a violation of an extant constitutional right at all. *Nicini*, 212 F.3d at 806. In this case, plaintiff appears to assert three (3) constitutional rights as the basis for her due process claim. In the interest of completeness, the court will address each of plaintiff's possible theories in turn.

Plaintiff first appears to rely upon a due process right to be free from sex discrimination while attending the Academy.[11] Plaintiff's claim is simply a reformulation of her equal protection claim, which the court has previously addressed. Thus, plaintiff's due process claim must suffer the same fate as her equal protection claim.

Next, plaintiff appears to rely upon a property interest in attending the

---

**8.** It is, of course, plausible that a defendant could comment on the physical appearance of both a male and female in similar terms but in different contexts such that a genuine issue of fact would remain as to whether the defendant purposefully discriminated against the female because of her sex. For instance, the defendant may use the same words toward both the male and female, but use them in a joking manner with the male and a threatening manner with the female. In this case, however, plaintiff has not alleged that defendant Fischer's comments regarding the male cadets' physical appearance occurred in a different context or tone of voice than those directed toward plaintiff.

**9.** Because the court concludes that defendant Fischer did not deprive plaintiff of her equal

protection rights, it is unnecessary to address plaintiff's equal protection claims against defendants Roberts, Drexler, and the City. Similarly, given the court's finding that plaintiff's equal protection rights were not violated, plaintiff agrees to withdraw her conspiracy claim brought under §§ 1983 & 1985. Pl.'s Mem., p. 23.

**10.** Plaintiff does not assert a liberty interest in support of her due process claim.

**11.** *See* Pl.'s Mem., p. 14 ("The Academy's failure amounts to the type and level of arbitrary and capricious behavior that is violative of plaintiff's constitutionally-protected right to continue such education as she had anticipated and without undue hardship nor interference.").

Academy with which defendants unlawfully interfered by failing to afford her an opportunity to pursue a complaint regarding the discrimination she suffered because of her sex at the hands of defendant Fischer.[12] Apparently, plaintiff contends that the absence of a grievance procedure to which she could appeal defendant Fischer's discrimination left her with no choice but to quit the Academy.[13] Even assuming that plaintiff has a property interest in attending the Academy, her claim must fail. Under plaintiff's theory, in order to prevail on her due process claim, she must establish both discrimination because of her sex and the absence of a grievance procedure for pursuing sex discrimination complaints at the Academy. Since the court has already determined that plaintiff was not the subject of discrimination because of her sex at the Academy, plaintiff's due process claim fails.[14]

▮▮▮ Finally, plaintiff asserts an independent property interest in a grievance procedure for pursuing sex discrimination complaints at the Academy which exists, according to plaintiff, whether or not defendant Fischer discriminated against her because of her sex.[15] Plaintiff, however, has not established a property interest in having available a grievance procedure for pursuing sex discrimination complaints at the Academy. Specifically, plaintiff has not pointed to any Pennsylvania law which requires a grievance procedure for filing sex discrimination complaints to be in place at the Academy. Neither has plaintiff shown that an administrative or internal Academy regulation provides such a procedure. In other words, plaintiff has not established that any "independent source" vests her with a property interest in a grievance procedure for pursuing sex discrimination complaints at the Academy. Thus, plaintiff has no "legitimate claim of entitlement" to a grievance procedure for pursuing sex discrimination complaints at the Academy. Rather, she has only shown an "abstract need or desire for [such a process and] a unilateral expectation of [one]. . . ." *Id.* Therefore, defendants are entitled to judgment on plaintiff's due process claim.[16]

## V. CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact as to whether her sex

---

12. *See* Pl.'s Mem., p. 13 ("Students attending state run facilities have a constitutionally protected interest in continuing their education.").

13. Plaintiff admits that defendants did not directly interfere with her asserted property interest in attending the Academy by dismissing her from the Academy. For this reason, the authorities cited by plaintiff involving the right of a student attending a public school to a hearing are not on point. *See e.g., Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (student dismissed from medical school); *Hines v. Rinker,* 667 F.2d 699 (8th Cir.1981)(same); *Stoller v. College of Medicine,* 562 F.Supp. 403 (M.D.Pa.1983)(same); *Ross v. Pennsylvania State University,* 445 F.Supp. 147 (M.D.Pa.1978) (student dismissed from graduate program). In those cases, the student had been involuntarily dismissed from the educational program. By contrast, plaintiff was not dismissed from the Academy, rather, she chose to transfer to another police academy.

14. Because plaintiff was not the subject of discrimination because of her sex at the Academy, the court need decide whether, if plaintiff had been discriminated against because of her sex at the Academy, she would have a property interest in a grievance procedure for pursuing sex discrimination complaints at the Academy.

15. *See* Pl.'s Mem., p. 12 ("Defendants neither afforded plaintiff the correct measure of due process for her complaints nor, more importantly, did they afford her a *right* guaranteed by the constitution *to pursue* what she reasonably believed was *due process.*") (emphasis in original).

16. Given the court's resolution of plaintiff's federal claims, plaintiff's husband's loss of consortium claim, as it relates to plaintiff's claims addressed above, is dismissed. Additionally, all of plaintiff's federal claims having been adjudicated, the court declines to exercise supplemental jurisdiction over plaintiff's assault and battery claim against defendant Fischer.

was a substantial factor in her treatment at the Academy or that she would have been treated differently if she were a male. Neither has defendant established a constitutional right to a grievance procedure for pursuing sex discrimination complaints at the Academy which defendants could have violated. Therefore, defendants are entitled to judgment on plaintiff's federal claims.